GLENN B. McCORMICK
Acting United States Attorney
District of Arizona
MARK J. WENKER
Assistant United States Attorney
Arizona State Bar No 018187
Two Renaissance Square
40 North Central Avenue, Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
Mark.Wenker@usdoj.gov
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>          Plaintiff,<br><br>     v.<br><br>$6,453.00 Seized from PayPal Account No. ending 2919,<br><br>          Defendant *In Rem*. | **VERIFIED COMPLAINT FOR FORFEITURE IN REM** |

Plaintiff, United States of America, brings this complaint and alleges as follows in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure, Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Rules"):

## NATURE OF THE ACTION

1. This is a civil action *in rem*, brought to enforce the provisions of 18 U.S.C. § 981(a)(1)(C) for the forfeiture of property, real or personal, which constitutes or is derived from proceeds traceable to a violation of a specified unlawful activity, including but not limited to, wire fraud, 18 U.S.C. § 1343.

## THE DEFENDANT *IN REM*

2. The defendant funds $6,453.00 seized from PayPal account #2919, represent fraudulently obtained unemployment insurance payments from the State of Arizona's Department of Economic Security ("Arizona DES").

**JURISDICTION AND VENUE**

3.  This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345 and an action for forfeiture under 28 U.S.C. § 1355(a).

4.  Venue and jurisdiction in Arizona is based upon 21 U.S.C. § 881(j), 28 U.S.C. § 1355(b) and § 1395 based upon acts and omissions occurring in the District of Arizona giving rise to this forfeiture action.

**FACTS**

*Unemployment Insurance Program for the State of Arizona*

5.  Unemployment Insurance (UI) is a state-federal program that provides monetary benefits to eligible lawful workers. Although state workforce agencies (SWAs) administer their respective UI programs, they must do so in accordance with federal laws and regulations. UI payments (benefits) are intended to provide temporary financial assistance to lawful workers who are unemployed through no fault of their own. Each SWA sets its own additional requirements for eligibility, benefit amounts, and length of time benefits can be paid as well as sets its own tax rates and collects contributions from employers to fund benefit payments in the state's regular UI program.

6.  Benefits paid are based on a percentage of earnings over a recent 52-week period (the first four of the last five quarters), up to a state established maximum of $240. Benefits can be paid for a maximum of 26 weeks in Arizona, as in most other states.

7.  An applicant seeking regular UI benefits through the Arizona DES complete an online application that includes, among other things, the claimant's name, date of birth, social security number, and the reason why the claimant is unemployed. To be eligible for benefits, the claimant: (1) must have been recently employed in the State of Arizona in the past 12 months; (2) must be currently unemployed; (3) must be able and available to work; and (4) must be actively seeking suitable full-time employment.

8.  On March 18, 2020, the Families First Coronavirus Response Act ("FFCRA") was signed into law. The FFCRA provides additional flexibility for state UI agencies and additional administrative funding to respond to the COVID-19 pandemic. Then, the Coronavirus Aid, Relief, and Economic Security ("CARES") Act was signed

into law on March 27, 2020, which expanded the states' ability to provide assistance to many workers impacted by COVID-19, including for workers who are not ordinarily eligible for UI benefits.

9. The CARES Act provided for three new temporary UI programs: Pandemic Unemployment Assistance ("PUA"); Pandemic Emergency Unemployment Compensation ("PEUC"); and Federal Pandemic Unemployment Compensation ("FPUC").

10. The PUA program initially provided for up to 39 weeks of benefits to individuals who are: (1) self-employed, seeking part-time employment, or otherwise would not qualify for regular UI or extended benefits under state or federal law or PEUC under section 2107 of the CARES Act; and (2) unemployed, partially unemployed, unable to work, or unavailable to work due to specific COVID-19 related reason(s). Coverage includes individuals who have exhausted all rights to regular UC or extended benefits under state or federal law or PEUC. Under the PUA provisions of the CARES Act, business owners, self-employed workers, independent contractors, or gig workers can qualify for PUA benefits administered by Arizona DES if they previously performed such work in Arizona and are unemployed, partially unemployed, unable to work, or unavailable to work due to a COVID-19 related reason.

11. PUA claimants must answer specific questions to establish their eligibility for PUA benefits. Claimants must provide their name, Social Security Number, mailing address and must self-certify that they meet one of the COVID-19 related reasons for being unemployed, partially unemployed, or unable or unavailable to work. Initially, the eligible timeframe to receive PUA was from weeks of unemployment beginning on or after January 27, 2020 through December 31, 2020.

12. The PEUC program initially provided for up to 13 times the individual's average weekly benefit amount to individuals who have exhausted regular UI under state or federal law, have no rights to regular UI under any other state or federal law, are not receiving UI under the UI laws of Canada, and are able to work, available for work, and actively seeking work. However, states must offer flexibility in meeting the "actively seeking work" requirement if individuals are unable to search for work because of COVID-

19, including because of illness, quarantine, or movement restriction. The eligible timeframe to receive PEUC was from weeks of unemployment beginning after the respective state has an established agreement with the federal government through December 31, 2020. The earliest being April 5, 2020.

13. The third program, FPUC, provided individuals who were collecting regular UI, PEUC, PUA, and several other forms of UC with an additional $600 per week. The eligible timeframe to receive FPUC was from weeks of unemployment beginning after the respective state had an established agreement with the federal government through July 31, 2020. The earliest being April 5, 2020.

14. On December 27, 2020, the Consolidated Appropriations Act, 2021—an omnibus spending bill that authorized an additional $120 billion in funding for pandemic related UI programs—was signed into law. Through a section titled the Continued Assistance for Unemployed Workers Act of 2020 ("Continued Assistance Act"), Congress extended and modified the three temporary UI programs created by the CARES Act and created a new benefit program.

15. The Continued Assistance Act increased the duration and availability of both PEUC, which provides benefits to individuals who have exhausted their state unemployment benefits, and PUA, which provides unemployment compensation to independent contractors and others unable to access traditional UI benefits through March 14, 2021. Additionally, the duration of PUA benefits for eligible individuals was effectively extended from 39 weeks under the CARES Act to a total of 50 weeks; the amount of PEUC benefits for eligible individuals was extended from 13 to 24 times the individual's average weekly benefit amount. FPUC was reauthorized at a lesser amount of $300 per week for weeks of unemployment beginning after December 26, 2020 through March 14, 2021. FPUC benefits remain unavailable for the gap between its expiration in the CARES Act (July 31, 2020) and its reauthorization in the Continued Assistance Act (December 26, 2020).

16. The Continued Assistance Act also created a new optional program, Mixed Earner Unemployment Compensation ("MEUC"), which Arizona DES opted to

administer. The MEUC program provides eligible individuals with an additional $100 payment each week, in addition to the FPUC payment. To be eligible, an individual must: (1) have received at least $5,000 of self-employment income in the most recent taxable year prior to the application for regular UC; (2) be receiving a UI benefit other than PUA for which FPUC is payable; and (3) submit documentation substantiating their self-employment income. Individuals receiving PUA are not eligible. MEUC is payable beginning with weeks of unemployment no earlier than the week ending January 2, 2021 through the week of unemployment ending on or before March 14, 2021.

17.   On March 11, 2021, the President signed the American Rescue Plan Act of 2021, which included approximately $250 billion in additional relief, including reauthorization of PUA, FPUC, PEUC, and MEUC. Under the American Rescue Plan Act, PUA and PEUC were extended, without interruption to weeks of unemployment ending on or before September 6, 2021, thereby allowing eligible individuals to collect PUA and PEUC benefits for an additional 29 weeks (79 weeks total for PUA and 53 times the individual's average weekly benefit amount for PEUC). However, there are 25 weeks between the week ending March 13, 2021 and the last payable week of September 4, 2021, making it unlikely that individuals would exhaust their full entitlement before the two programs expire. Additionally, the $300 FPUC benefit was extended through September 6, 2021. The MEUC program was also extended through September 6, 2021 for SWAs choosing to administer it.

18.   According to data maintained by the U.S. Department of Labor—Employment and Training Administration, through March 20, 2021, SWAs requested and received approximately $480 billion in CARES Act funding related to PUA, FPUC, and PEUC benefit payments. In total, it is estimated that as of September 2021, the federal government's response to the COVID-19 pandemic will have included more than $900 billion in pandemic related UI funding for SWAs to administer for individuals who have been impacted by COVID-19.

**Filing a UI Claim with Arizona DES**

19.     The Arizona DES system allows individuals to submit an online application for unemployment benefits. The application requires a name, valid social security number, date of birth, address, employment information, and current employment status. As a condition of approval, individuals have two sections within the online application, Acknowledgement[1] and Important Agreement[2], where they must self-certify that they understood the civil and criminal ramifications for submitting false statements. Applicants also entered the banking information where UI payments would be sent. Initially, Arizona DES gave benefit recipients the option of being paid via a check or ACH transfer from its financial institution, Bank of America, but ultimately added a third option for PUA benefits: receiving benefits on a pre-paid debit card.

20.     Approved claimants can also request continuous weekly benefits. To do so, the claimants must recertify online every week that they remain unemployed and eligible to continue receiving UI benefits.

21.     In order to get eligible individuals (business owners, self-employed workers, independent contractors, or gig workers) PUA benefits, the PUA program allowed claimants to self-certify, but did not require documentation to establish the identity of the claimant, or proof the claimant was eligible for benefits. Unlike traditional UI claims, Arizona DES could not cross-reference these claims against existing data from employers in Arizona. As a result, millions of fraudulent UI benefits were unknowingly issued by Arizona DES. In addition, Arizona DES was also defrauded by claims fraudulently filed by individuals using information obtained by identity theft.

***Diane E. Wallen Fraudulent UI Application and Claim***

---

[1] The application stated, "I understand that the self-certification I made on the previous screen is under penalty of perjury and that any intentional misrepresentation in self certifying that I fall into the COVID-19 category I selected on the previous screen is fraud. I understand that if I am found to have committed fraud I may be subject to criminal prosecution." To continue, the applicant had to check, "Yes, I understand."

[2] The certification acknowledgement stated: "By submitting this application I certify that All information submitted is true and complete, I am responsible to read the PUA Handbook and any other official written material provided to me regarding any benefit program; and I acknowledge that any false statements in this document are punishable pursuant to CFR 625.14 referenced in Section 2102 of CARES Act of 2020, relating to sworn falsification to authorities, and that a person who knowingly makes a false statement or knowingly withholds information to obtain UC or other benefits commits a criminal offense and may be subject to a fine, imprisonment, restitution, and loss of future benefits." To continue, the applicant had to check, "Yes, I want to file this claim."

22. Diane E. Wallen applied for UI benefits on May 28, 2020, for benefit year effective date March 1, 2020 and end date of December 26, 2020.

23. On April 22, 2021, United States Magistrate Judge John Z. Boyle authorized a federal seizure warrant to seize approximately 212,534 accounts held by PayPal Holdings, Inc. ("PPH"), a corporation based in San Jose, California. Each of the seized PPH accounts contained at least $100 in funds transferred into the account exclusively by Arizona DES, for a total of approximately $175,750,161.81 in either synthetic or money mule accounts, and all seized accounts had suspected fraudulent payments from Arizona DES deposited or transferred into the accounts.

24. The U.S. Secret Service commenced administrative forfeiture for the defendant *in rem*, and on July 21, 2021, received a claim from Diane E. Wallen contesting the forfeiture of $6,453.00. On July 23, 2021 Ms. Wallen's claim was referred to U.S. Attorney's Office to initiate judicial proceedings.

25. Part II of the Claim Form: *State your interest in each item of property listed above. Please provide any documents that support your claim of interest in these items.*

26. Ms. Wallen provided no information as to her interest.

27. After several attempts to contact Ms. Wallen, USSS investigators determined Wallen's claim to be fraudulent because 1) the email address provided by Ms. Wallen was known to be fraudulent and foreign in nature, 2) the IP address reflected a Chicago tie but the mailing address was Chandler, Arizona, 3) the address name was incorrect as there is no Concho Lanen in Chandler, and 4) the name and SSN provided had an OP in Colorado.

### FIRST CLAIM FOR RELIEF

The defendant funds constitute or are derived from proceeds traceable to a violation of a specified unlawful activity, including but not limited to, wire fraud, 18 U.S.C. § 1343, and therefore, are subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C).

WHEREFORE, the United States of America prays that due notice be given to all parties, to appear and show cause why the forfeiture should not be decreed; that judgment be entered declaring the defendant be forfeited to the United States of America for

disposition according to law; and that the United States of America be granted such other and further relief as this Court deems just and proper, together with the costs and disbursements of this action.

Respectfully submitted this 19th day of October 2021.

GLENN B. McCORMICK
Acting United States Attorney
District of Arizona

*S/ Mark J. Wenker*
MARK J. WENKER
Assistant United States Attorney